## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

James Clark, *et al.*,                        )
                                              )
      Plaintiffs,              )
                                              )
v.                                            )          Case No. 19-cv-2297-CM-ADM
                                              )
Scott Schwab, in his official                 )
capacity as the Secretary of State of         )
Kansas, *et al.*,                             )
                                              )
      Defendants.              )
_____)

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## FOR LACK OF JURISDICTION

### *Introduction*

Plaintiffs seek orders declaring two Kansas statutes are unconstitutional. They want the Court to enjoin the statutes' implementation and enforcement. The statutes are K.S.A. 2018 Supp. 25-2430, which criminalize certain electioneering activity, and K.S.A. 2018 Supp. 25-2810, which allows local election officials to set rules for behavior in and around polling places. The earliest versions of these statutes have been on the books since on or before the 1890s. Now, in 2019, plaintiffs hope to place their complaints that the statutes impermissibly restrict speech and violate due process before the courts.

However, plaintiffs have sued the wrong defendants–or at least should not have sued Secretary of State Scott Schwab. The Court lacks jurisdiction to resolve plaintiffs' claims against Secretary Schwab concerning the Kansas electioneering statute because of lack of standing and sovereign immunity. In particular, plaintiffs'

claimed injury from the electioneering statute is not traceable to Secretary Schwab and, as to the *Ex Parte Young* exception to sovereign immunity, Secretary Schwab has demonstrated no willingness to prosecute violations of K.S.A. 2018 Supp. 25-2430.

Likewise, the Court lacks jurisdiction to resolve plaintiffs' claims against Secretary Schwab concerning possible regulation of activity near polling places because of lack of standing and sovereign immunity. Plaintiffs' claimed injury from the voting place control statute is not traceable to Secretary Schwab. And Secretary Schwab has no duty to enforce and has not demonstrated any willingness to enforce the statute.

In short, the Court should dismiss Secretary Schwab pursuant to Fed. R. Civ. P. 12(b)(1).

### *Nature of Motion*

Article III standing is a limitation on the authority of a federal court to exercise jurisdiction. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013). "[S]tanding 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019). A plaintiff must establish standing in order to invoke a federal court's jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Furthermore, Eleventh Amendment sovereign immunity is considered a limitation on a federal court's subject matter jurisdiction. The Eleventh Amendment renders a state immune from suits brought in federal courts by her own citizens as

well as citizens of another state. *Pennhurst St. Sch. & Hospital v. Halderman*, 465 U.S. 89, 100 (1984). State agencies that qualify as arms of the state possess sovereign immunity, as well. *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000). This immunity applies to a state entity whether a plaintiff seeks declaratory, injunctive, or monetary relief. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002).

Dismissal for both lack of standing and immunity under the Eleventh Amendment can be pursued under Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"). *E.g.*, (lack of standing); *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (Eleventh Amendment).

Under Rule 12(b)(1), the plaintiff must prove the court has subject matter jurisdiction. *United States ex rel. Hafter, D.O. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) ("the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence," citation omitted).

Under Rule 12(b)(1), the moving party may go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n. 4 (10th Cir. 2015). The court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts, so long as the jurisdictional question does not require resolution of an aspect of the substantive claim. *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000); *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); *Wheeler v. Hurdman*,

825 F.2d 257, 259 n. 5 (10th Cir. 1987), *cert. denied*, 484 U.S. 986 (1987). *Accord*, *Gabriel v. United States*, 683 Fed.Appx. 671, 673-74 (10th Cir., *unpub.*, March 30, 2017). The court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Wheeler*, 825 F.2d at 259 n. 5.[1]

### Applicable Facts

1.      Plaintiffs seek only prospective relief. They demand declarations that K.S.A. Supp. 2018 25-2430 and K.S.A. 2018 Supp. 25-2810 are unconstitutional, facially and as applied, with injunctions against defendants preventing them from enforcing K.S.A. Supp. 2018 25-2430 and implementing K.S.A. 2018 Supp. 25-2810. ECF 001, "Prayer for Relief," ¶¶ b-f.

2.      K.S.A. 2018 Supp. 25-2430 reads:

Electioneering. (a) Electioneering is knowingly attempting to persuade or influence eligible voters to vote for or against a particular candidate, party or question submitted. Electioneering includes wearing, exhibiting or distributing labels, signs, posters, stickers or other materials that clearly identify a candidate in the election or clearly indicate support or opposition to a question submitted election within any polling place on election day or advance voting site during the time period allowed by law for casting a ballot by advance voting or within a radius of 250 feet from the entrance thereof. Electioneering shall not include bumper stickers affixed to a motor vehicle that is used to transport voters to a polling place or to an advance voting site for the purpose of voting.

---

[1] *E.g., Nekouee v. Indian Creek Shopping Center, L.L.C.,* No. 2:18-CV-02238, 2019 WL 1281442 (D. Kan. March 20, 2019) (considering affidavit regarding lack of standing); *Port–A–Pour, Inc. v. Peak Innovations, Inc.,* No. 13-cv-01511, 2014 WL 3512851 (D. Colo. July 14, 2014) (same); *Columbian Financial Corp. v. Stork*, 216 F.Supp.3d 1267 (D. Kan. Oct. 19, 2016), *rev'd on other grounds*, 702 Fed.Appx. 717 (10th Cir., *unpub.*, July 25, 2017) (considering affidavit regarding Eleventh Amendment immunity); *Pearson v. New Mexico Department of Corrections*, No. 05-1089 MV/KBM, 2006 WL 8443890 (D. N.M. Sept. 21, 2006) (same).

(b) As used in this section, "advance voting site" means the central county election office or satellite advance voting sites designated as such pursuant to subsection (c) of K.S.A. 25-1122, and amendments thereto, and adult care homes and hospital based care units at the time of an election participating in the voting procedures prescribed in K.S.A. 2018 Supp. 25-2812.

(c) Electioneering is a class C misdemeanor.

*Id.*

3.     Defendant Scott Schwab ("Secretary Schwab") was elected Kansas Secretary of State in November 2018, assuming the office January 14, 2019. He succeeded Secretary Kris Kobach. Exhibit 1, Secretary Schwab Declaration, ¶ 1.

4.     Secretary Schwab made the decision that he and his office will not prosecute election crimes, including electioneering prohibited by K.S.A. 2018 Supp. 25-2430, despite the provisions of K.S.A. 2018 Supp. 25-2435 which grant that discretionary authority to his office. Exhibit 1, ¶¶ 5-6.

5.     The Kansas Secretary of State's office does not employ prosecutors. It has not budgeted the funds necessary to make inquiries and collect information in order to determine whether election crimes have been committed. It has not budgeted funds to prosecute election crimes. Exhibit 1, ¶ 7.

6.     In 2018, when campaigning for the office of Kansas Secretary of State, Secretary Schwab stated, on a number of occasions, that he was not interested in prosecuting election crimes and that he would not prosecute such crimes if elected. Secretary Schwab explained that he is a business man, not an attorney, and that he is not trained to properly assess the evidence in order to make prosecutorial decisions. He expressed his view that regular criminal prosecutors should handle

voter fraud and other election crime cases. He said the limited legal resources of the Secretary of State's office would be more appropriately applied to administering the constitutional duties of the office than prosecuting crimes. Exhibit 1, ¶ 8.

7.      Secretary Schwab supported legislation, 2019 House Bill 2042, which would have removed the authority of the Kansas Secretary of State to prosecute election crimes. Exhibit 1, ¶ 9. At his direction, on January 28, 2019, Deputy Assistant Secretary of State Katie Koupal provided written testimony to the House Corrections & Juvenile Justice Committee supporting the bill. Exhibit 1, ¶ 8 & Exhibit 1's Exhibit A. This testimony expressed Secretary Schwab's position that he is a "businessman, not an attorney, and believes the limited legal resources of the Office [of Secretary of State] would be more appropriately applied to administering the constitutional duties of the Office of Secretary of State and ensuring Kansas elections continue to be safe and trustworthy." *Id.*

8.      While 2019 House Bill 2042 did not become law, Secretary Schwab remains committed that he and his office will not prosecute election crimes. Exhibit 1, ¶ 10.

9.      There is no allegation in plaintiffs' complaint that Secretary Schwab has prosecuted or threatened prosecutions for alleged or actual violations of K.S.A. 2018 Supp. 25-2430.

10.     The Secretary of State office's interpretation of K.S.A. 2018 Supp. 25-2430 is informed by an October 22, 2018 attorney general opinion, Kan. Atty. Gen.

Op. No. 2018-15, 2018 WL 5314193 (Oct. 22, 2018). The synopsis to that opinion

provides:

> The mere presence of a person offering non-partisan voter assistance,
> or signage advertising the same, within 250 feet of the entrance to a
> polling place does not constitute electioneering so long as such
> activities do not include acts prohibited by K.S.A. 2018 Supp. 25-
> 2430(a). The offering of non-partisan voter assistance or signage
> advertising such assistance, by themselves, do not constitute unlawful
> disorderly election conduct or intimidation of voters unless the person
> or persons conducting such activities also engaged in conduct
> prohibited by K.S.A. 25-2413 or K.S.A. 2018 Supp. 25-2415,
> respectively. Whether the offering of non-partisan voter assistance and
> education, or the posting of signage advertising a non-partisan voter
> assistance hotline or website, constitutes the crimes of electioneering,
> disorderly election conduct, or intimidation of voters depends on the
> facts of each individual case.
>
> A polling place is a nonpublic forum subject to reasonable restrictions
> on speech. The election board of each polling place is authorized to
> guide, manage, direct, and oversee the polling place to ensure that
> voting is conducted in an orderly manner. Cited herein: K.S.A. 25-
> 2413; K.S.A. 2018 Supp. 25-2415; 25-2430; 25-2810.

Exhibit 1, ¶ 11.

11.     The Kansas Secretary of State's office accepts and approves the

attorney general's interpretation of the statutes discussed in the formal opinion.

Any prior inconsistent interpretations expressed by Secretary Schwab's predecessor

secretaries of state or their subordinates do not express Secretary Schwab's views

and no longer express the views of the Kansas Secretary of State's office. Exhibit 1,

¶ 12.

12.     Plaintiffs allege: "The State of Kansas also maintains a law granting

election officials 'control' over voting places, K.S.A. § 25-2810, subject to the

oversight authority of the Kansas Secretary of State." ECF 001, ¶ 3.

13.     K.S.A. Supp. 2018 25-2810(a) & (b) read:

(a) Each election board shall have control of its voting place and election procedure under the sole supervision of the secretary of state, county election officer, deputy county election officers and the supervising judge. The election board shall open the polls at the time specified by the county election officer. The judges shall have charge of the ballots and the supervising judge shall designate one of their number to furnish them to voters as provided by law.

(b) Any election board of five or more members may be divided by the county election officer into a receiving board and a counting board, and the receiving board shall furnish and receive ballots and record the names of voters. The receiving board shall have control of the voting place and election procedure under the sole supervision and direction of the secretary of state, county election officer, deputy county election officers, and the supervising judge. The receiving board shall open and close the polls at the time specified by the county election officer.

*Id.*

14.     Plaintiffs allege that the Secretary of State "maintains an official policy of granting election officials unfettered discretion to restrict any speech or assembly activity within 250 feet of a polling location if they forecast that the activity could become a nuisance." ECF 001 ¶¶ 3, 25 & 61.[2] They cite to and attach portions of a 2014 document entitled KANSAS ELECTION STANDARDS MANUAL (2014) ("2014 Manual"). ECF 001 ¶ 25, n. 4; ECF 001.1.[3]

---

[2] This allegation must be read in the context of the document plaintiffs have attached to their Complaint. *See* ECF 001 ¶ 25, n. 4; ECF 001.1. "Factual" allegations that contradict a properly considered document are not well-pleaded facts the court must accept as true. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir.1997).

[3] A copy of the excerpt from KANSAS ELECTION STANDARDS MANUAL (2014) which plaintiff attached to their complaint is Exhibit 2 to this pleading. Secretary Schwab is still in the process of verifying that the copy plaintiff attached is authentic and is the last the version of the 2014 Manual which had been posted on-line by the Secretary of State's office.

15.     The cited part of the 2014 Manual[4]–the only non-conclusory purported

fact statement of the alleged Secretary of State policy[5]–provided:

> With very few exceptions, the county election officer is the person in charge of conducting all official elections in the county. ECF 001.1, p. II-1.
>
> \*\*\*
>
> The county election officer is responsible for appointing, training and equipping members of the election board in each precinct or voting area. ECF 001.1, p. II-25.
>
> \*\*\*
>
> Each election board is usually composed of three or more members with one supervising judge, one or more judges, and the rest clerks. [KSA 25-2803] The board may be as small as two members in a precinct of fewer than fifty registered voters with a polling place more than ten miles from the nearest polling place. [KSA 25-2808(b)] The members of the board, excluding the supervising judge, are required to represent a mix of political parties, but this requirement may be relaxed if it is impossible to obtain an adequate number of board members of different political affiliations. [KSA 25-2802] ECF 001.1, p. II-26.
>
> \*\*\*
>
> County election officers are required by state law to provide instruction for election board workers. The county election officer may "provide instruction" by handing supervising judges and clerks printed materials, or by conducting classroom-style training sessions. The nature of the training is up to the county election officer, as well as such questions as whether to pay election workers for the hours spent in training, whether the training of supervising judges is different than the training of clerks, and other issues. ECF 001.1, p. II-28.
>
> \*\*\*

---

[4] The old Secretary of State manual, KANSAS ELECTION STANDARDS MANUAL (2014), is not available on-line (have been removed many months ago) and it is not currently used by the Secretary of State's office. The current manual, however, is on-line and available at https://sos.kansas.gov/elections/.

[5] Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Election boards are required to comply with all statutes and regulations governing the voting procedure. At the same time, they are required to enforce the rules for voting in their polling place and within a 250-foot radius of the entrance. The county election officer and the supervising judge have control over the polling place and may restrict activities if they hinder or impede the voting process. This may include activities of authorized poll agents, members of the press, exit pollsters, candidates, or voters not immediately involved in the act of voting. In setting the rules for the polling place, the main concern is to preserve the ability of voters to receive their ballots and cast them in secrecy. To that end, they must prevent unauthorized access to ballots and prevent electioneering. [KSA 25-2810] ECF 001.1, p. II-29

\*\*\*

**Election Board Authority**

Election boards are responsible for all activities that occur at the polling place. The supervising judge, acting under the direction of the county election officer, enforces laws and county policies regarding voting procedures. One important component of this duty is to prevent illegal activities such as electioneering. This sometimes requires coordination with local law enforcement officials. [KSA 25-2810] Some CEOs have adopted policies prohibiting cell phones, cameras, video cameras or Bluetooth devices in polling places. These items may be prohibited to protect voters' ability to vote without intimidation or distraction, to prevent discussions about ballot measures, and to prevent wireless communications which may allegedly interfere with the operation of electronic voting equipment. Some CEOs also have adopted policies prohibiting the distribution of printed materials at the polling place or within 250 feet of the entrance. Even if the printed materials are not related to any candidate or issue on the ballot, their distribution may be prohibited to avoid situations that may be nuisances or distractions for voters. Examples include the distribution of religious pamphlets at polling places held in churches.

This type of policy is consistent with the statutory responsibility of election boards: "Each election board shall have the control of its voting place and election procedure under the sole supervision of the secretary of state, county election officer, deputy county election officer and the supervising judge." [KSA 25-2810(a)] ECF 001.1, pp. II-41, II-42.

16.     While the election board of each polling place "controls" and is

authorized to guide, manage, direct, and oversee the polling place to ensure that

10

voting is conducted in an orderly manner, the Kansas Secretary of State does not create or approve such election board policies, procedures or practices. Secretary Schwab does not have the authority to enforce the policies, procedures or practices that the election boards adopt. Secretary Schwab's office will not attempt to enforce such policies, procedure or practices. Exhibit 1, ¶ 13.

### Argument

Plaintiffs assert five counts in their Complaint. The counts are: Count 1: alleged "Facially Invalid Electioneering Buffer Zone (K.S.A. § 25-2430[6])," brought by three of four plaintiffs (Mr. Clark, Kansas for Change and Mr. DeGroot) against all defendants[7]; Count 2: alleged "Electioneering Buffer Zone Invalid As-Applied," brought by Mr. Clark, Kansas for Change and Mr. DeGroot against Secretary Schwab[8]; Count 3: alleged "Electioneering Buffer Zone Invalid As-Applied," brought by Ms. Rosen against Defendant Ronnie Metsker[9]; Count 4: alleged "Unbridled Discretion Under the Voting Place Control Statute"[10], also brought by all plaintiffs against all defendants[11]; and Count 5: alleged "Due Process Violation from

---

[6] K.S.A. 2018 Supp. 25-2430.

[7] ECF 001, ¶¶ 68-72.

[8] ECF 001, ¶¶ 74-75.

[9] ECF 001, ¶¶ 77-79.

[10] K.S.A. 2018 Supp. 25-2810.

[11] ECF 001, ¶¶ 81-84.

Unfettered Discretion Under the Voting Place Control Statute" by all plaintiffs

against all defendants.[12]

1.   *Regarding Counts 1 & 2: The Court lacks jurisdiction to resolve plaintiffs' claims against Secretary Schwab concerning the Kansas electioneering statute (K.S.A. 2018 Supp. 25-2430) because of lack of standing and sovereign immunity.*

   a.   *As plaintiffs' claimed injury from the electioneering statute is not traceable to Secretary Schwab, they have no standing to pursue him under Counts 1 and 2.*

The three elements of Article III standing are (1) a concrete and

particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is

likely to be redressed by a favorable decision. *Virginia House of Delegates v.*

*Bethune-Hill*, 139 S.Ct. 1945, 1950 (2019). *Accord*, *Collins*, 916 F.3d at 1313.

Plaintiffs claim that they fear future "arrest and prosecution" under K.S.A.

2018 Supp. 25-2810 if they engage in their desired activities such that their exercise

of First Amendment Rights are impermissibly chilled. ECF 001, ¶¶ 4, 6, 8, 9, 14 &

15. This is the "concrete and particularized injury" that they assert from the Kansas

electioneering statute.[13]

"When a plaintiff challenges the validity of a criminal statute under which he

has not been prosecuted, he must show a 'real and immediate threat' of his future

---

[12] ECF 001, ¶¶ 86-88.

[13] A credible threat is one that is "well-founded" and "not 'imaginary or wholly speculative.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (*quoting Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988), and *Babbitt v. Farm Workers*, 442 U.S. 289, 302 (1979)). "In other words, to satisfy Article III, the plaintiff's expressive activities must be inhibited by an objectively justified fear of real consequences." *Winness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) (quotation omitted).

prosecution under that statute to satisfy the injury in fact requirement," *i.e.*, a credible threat of prosecution. *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004) (*citing Faustin v. City and County of Denver, Colo.*, 268 F.3d 942, 948 (10th Cir. 2001)).

In *Faustin v. City & County of Denver*, *supra*, the court held disavowal of an intent to prosecute under a statute prior to the filing of a complaint defeated standing. The Tenth Circuit reached the same conclusion in *D.L.S. v. Utah*, 374 F.3d 971 (10th Cir. 2004) (disavowal of an intent to enforce a criminal sodomy statute against the plaintiff after the complaint was filed, even if it might have been enforced against another class of persons, was enough to defeat standing). A few years later, in *Winness v. Tocom*, 433 F.3d 727, 731 (10th Cir. 2006), the court decided that the plaintiff lacked standing when criminal charges against the plaintiffs were dropped and assurance was provided, by affidavit, that the district attorney's office would not prosecute future flag abuse, even though this assurance was only provided after plaintiff's suit had been filed. In each case, the court determined there was no credible threat of future prosecution.

This "no credible threat" case law was followed in *Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007). There the police department had investigated the plaintiff for alleged violations of a Colorado law, which made it "criminal libel" to knowingly publish any statement tending to "impeach the honesty, integrity, virtue, or reputation or expose the natural defects of one who is alive [ ] and thereby to expose him to public hatred, contempt, or ridicule." Before the plaintiff was charged with

the crime, he filed suit alleging that the statute was an unconstitutional violation of the First Amendment. *Id.* at 1248. But, early in the suit, the police investigation against him terminated and the district attorney's office disavowed any intent to prosecute. *Id.* at 1255. As a result, the district court dismissed the case for lack of standing and the Tenth Circuit affirmed. The circuit court concluded that "a plaintiff cannot retain standing where the prosecutor immediately concludes that the statute cannot be constitutionally enforced." *Id.* The Tenth Circuit also noted, "[a]ssurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past." *Id.* at 1253 (*quoting Winsness*, 433 F.3d at 731, *quoting D.L.S. v. Utah*, 374 F.3d at 975).

In *Bronson v. Swensen*, 500 F.3d 1099 (10th Cir. 2007), the court expanded its focus regarding the impact from assurances of non-prosecution from the first element of standing (concrete and particularized injury) to the remaining two standing elements (causation–"fairly traceable to the challenged" and redressability–"likely to be redressed by a favorable decision"). The *Bronson* plaintiffs wanted to challenge the constitutionality of Utah's bigamy laws. They sued the Clerk of Salt Lake County who had instructed her deputy clerks to deny plaintiffs' marriage application. The court held that plaintiffs' fear of prosecution— the alleged injury that anchored their constitutional claim—was not "fairly traceable" to the clerk's acts. It reasoned the clerk had no power to initiate a

14

criminal prosecution. It stated "there is no nexus between this defendant's past or possible future conduct and plaintiffs' fear of criminal prosecution under Utah law." *Id.* at 1110.

To be sure, K.S.A. 2018 Supp. 25-2435(a)(3) gives the Kansas Secretary of State "independent authority to prosecute" election crimes, including the electioneering criminalized by K.S.A. 2018 Supp. 25-2430. However, before this lawsuit was filed, Secretary Schwab made it clear that he and his office will not prosecute election crimes. *See* Applicable Facts, *supra* ("Facts"), ¶¶ 4-9. Therefore, like in *Bronson*, Secretary Schwab is not the cause and is not linked to the asserted injury-in-fact (a credible threat of prosecution) which plaintiffs allege from possible enforcement of the electioneering statute.

If plaintiffs can adequately show a credible threat of prosecution, it must be from others, not Secretary Schwab. *See Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225-26 (10th Cir. 2008) (the claimed injury in fact must be traceable to the defendant before the court). *See also, Nova Health Systems v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (finding "no evidence that the defendants have done or have threatened to do anything that presents a substantial likelihood of causing Nova harm" in concluding plaintiff failed to establish standing's second element).

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016), analyzed the mootness doctrine where the Utah's attorney general had a "policy ... not to prosecute polygamists under Utah's criminal bigamy statute for just the sake of their practicing polygamy." *Id.* at 1158. To reach the mootness issue, it assumed without

deciding standing from a credible threat of prosecution. It then found the case was moot in light of the attorney general's policy. Important here, the court rejected plaintiffs' argument that the no prosecution policy was a sham. The court stated: "We see no basis to question Mr. Buhman's bona fides after he publicly adopted under penalty of perjury and submitted to the federal court the same prosecution policy that the chief law enforcement officer of the state had previously adopted." *Id*. at 1171.[14]

In this case, Secretary Schwab stated that there would be no prosecution of election crimes by him or his office before this suit was filed, and he has also submitted a declaration, under penalty of perjury, that there would no such prosecution. Facts ¶¶ 4-9. Therefore, the Secretary of State cannot be the source of a credible threat of prosecution under K.S.A. 2018 Supp. 25-2430. Plaintiffs' claimed injury is not traceable to Secretary Schwab; they will need to find another defendant to establish constitutional standing to pursue Counts 1 and 2 of the Complaint.

---

[14] Other potentially noteworthy discussions in *Brown* included that panel's rejection of the plaintiff's effort to narrow application of the no credible threat case law. The court found that it was not necessary that the prosecution was repudiated because a prosecutor concluded the challenged statute was unconstitutional, unenforceable or probably so. 822 F.3d at 1174-75. Moreover, while *Brown* noted a future prosecutor might reverse the non-prosecution policy, it reasoned this is both unremarkable and unpersuasive on whether the case was justiciable. It said, concerning mootness but equal application to standing, that possibility does not breathe life into the case. "If it did, federal courts would be free to exercise judicial review of any rarely used state statute based on the hypothetical that some unknown and yet-to-be-elected local prosecutor someday may flout or change office policy and decide to enforce it." *Id*. at 1175.

  b.  *Ex Parte Young's exception to sovereign immunity is not applicable to Secretary Schwab as he has demonstrated no willingness to prosecute violations of K.S.A. 2018 Supp. 25-2430.*

In the introduction to their complaint, plaintiffs protest: "The State of Kansas **maintains and enforces** a law, K.S.A. § 25-2430, prohibiting any person from attempting to persuade or influence eligible voters to vote for or against a particular candidate, party, or ballot initiative within a 250-foot radius from the entrance of a polling place open for voting." ECF 001 ¶ 1 (emphasis supplied). But the State of Kansas cannot be sued in federal court. This leaves plaintiffs to try to shoehorn their desired challenge to the Kansas electioneering statute into the *Ex Parte Young's* exception to sovereign immunity. Again, plaintiffs have not sued a correct defendant.

The Eleventh Amendment protects a state and its arms from suit without their consent.[15] *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The Eleventh Amendment bars suits for damages and other forms of relief against state defendants acting in their official capacities. *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002); *Collins v. Daniels*, 916 F.3d 1302, 1361 (10th Cir. 2019). There is an exception to state sovereign immunity, however, for suits seeking prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159–60 (1908); *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 760 (10th Cir.2010); *Buchheit v. Green*, 705 F.3d 1157 (D. Kan. 2012).

---

[15] There is no allegation that the Secretary of State or the State of Kansas consented to this suit.

Determining whether a request for injunctive relief is prospective requires a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quotation omitted). For the *Ex Parte Young* doctrine to apply, there are two prerequisites that must be present: the defendant state official must (1) have "some connection with the enforcement of the act" and (2) "threaten" or be "about to commence" proceedings to enforce the act. *Ex Parte Young*, 209 U.S. at 155-56.

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013), restates the controlling principle here: "Defendants are not required to have a 'special connection' to the unconstitutional act or conduct. Rather, state officials must have a particular duty to 'enforce' the statute in question ***and a demonstrated willingness to exercise that duty***." *Id.* at 1205 (*quoting Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir.2007)) (emphasis supplied). *See also, Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414 (6th Cir.1996) ("*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional statute").

Secretary Schwab has not prosecuted or threatened to prosecute violations of K.S.A. 2018 Supp. 25-2430. Facts ¶¶ 3-9. Plaintiffs' claims against Secretary Schwab are claims against the state barred by the Eleventh Amendment. Plaintiffs will need to find another official to sue. *Cf. Kilroy v. Husted*, 868 F.Supp.2d 652 (S.D. Ohio 2012), *vacated upon appeal* (cited for persuasive force only, held Ohio

Secretary of State had Eleventh Amendment immunity because he had not enforced or sought to enforce challenged statute).

> 2. *Regarding Counts 4 and 5: The Court lacks jurisdiction to resolve plaintiffs' claims against Secretary Schwab concerning possible regulation of activity near polling places, under K.S.A. 2018 Supp. 25-2810, because of lack of standing and sovereign immunity.*
>
>> a. *As plaintiffs' claimed injury from voting place control statute is not traceable to Secretary Schwab, they have no standing to pursue him under Counts 4 and 5.[16]*

To begin with, plaintiffs' standing to pursue Counts 4 and 5 must be considered separately from whether standing is shown on any other count. "Each plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). *E.g., Jordan v. Sosa*, 654 F.3d 1012 (10th Cir. 2011) (finding standing to pursue only a portion of plaintiff's claims because plaintiff did not face a credible threat of prosecution as to some of the claims).

However, just as with the Kansas electioneering statute, plaintiffs' claimed injury from possible regulation of activity near polling places–which plaintiff label "unfettered discretion"– is not traceable to Secretary Schwab. Accordingly, plaintiffs cannot establish standing to pursue their claims against him.

The complaint contains repetitive, conclusory allegations that each defendant maintains a policy which empowers state and local election officials to exclude

---

[16] Again, Count 3 of the Complaint is against Secretary Schwab's co-defendant only.

anyone from engaging in any activity within 250 feet of a polling location. ECF 001,

¶¶ 5, 18, 23, 40, 41, 42, 54, 61, 81, 86. In paragraph 25, they state:

> The Secretary of State maintains an official policy authorizing election officers to impose any speech and assembly restrictions under K.S.A. § 25-2810(b), explaining that such prohibitions within the 250-foot radius of a polling place entrance are "consistent with the statutory responsibility of election boards."

ECF 001, ¶ 25. *See also Id.* ¶ 37 ("The Secretary of State maintains an official policy

… under K.S.A. § 25-2810"); ¶ 61 ("These arbitrary non-electioneering restrictions

… are a direct result of the unfettered discretion granted to election judges by

Defendant Schwab's official policy interpreting K.S.A. § 25-2810"). The only detail

provided about the alleged policy is plaintiffs' citation to a 2014 Manual. ECF 001 ¶

23, n.3; ¶ 25, n. 4; ECF 001.1 [Exhibit 2]. The cited parts of the manual state:

### Election Board Authority

> Election boards are responsible for all activities that occur at the polling place. The supervising judge, acting under the direction of the county election officer, enforces laws and county policies regarding voting procedures. One important component of this duty is to prevent illegal activities such as electioneering. This sometimes requires coordination with local law enforcement officials. [KSA 25-2810]

> Some CEOs have adopted policies prohibiting cell phones, cameras, video cameras or Bluetooth devices in polling places. These items may be prohibited to protect voters' ability to vote without intimidation or distraction, to prevent discussions about ballot measures, and to prevent wireless communications which may allegedly interfere with the operation of electronic voting equipment. Some CEOs also have adopted policies prohibiting the distribution of printed materials at the polling place or within 250 feet of the entrance. Even if the printed materials are not related to any candidate or issue on the ballot, their distribution may be prohibited to avoid situations that may be nuisances or distractions for voters. Examples include the distribution of religious pamphlets at polling places held in churches.

> This type of policy is consistent with the statutory responsibility of election boards: "Each election board shall have the control of its voting place and election procedure under the sole supervision of the secretary of state, county election officer, deputy county election officer and the supervising judge." [KSA 25-2810(a)]

Exhibit 2, II-41 to II-42 (bracketed citations original).[17] From this, plaintiffs assert that "unfettered discretion under the voting place control statute" has a chilling effect on their exercise of First Amendment rights. ECF 001, Count 4. *See also id.* ¶¶ 7, 16, 84, 85.

However, it is a statute that provides enabling authority to local election boards to set voting place rules (including any time, place or manner restrictions on speech), not the Kansas Secretary of State. *See* K.S.A. 2018 Supp. 25-2810(a) & (b) (each "election board" or "receiving board" "shall have control of its voting place and election procedure"). Perhaps more important here, it is local election boards–third parties not before the court–that may or may not implement rules which may chill plaintiffs' First Amendment rights. Likewise, it is the alleged unbridled discretion of these local boards, granted by a state statute, which supposedly violates First and Fourteenth Amendment rights.

In *Northern Laramie Range Alliance v. F.E.R.C.*, 733 F.3d 1030 (10th Cir. 2013), the court explained:

> Standing exists only if the injury is "'fairly ... trace[able] to the challenged action of the defendant ... and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan [v. Defenders of Wildlife*, 504 U.S. [555,] 560 [ ] [1992] (citation omitted). But here, the injury "depends on the unfettered choices made by independent actors," *Rocky Mountain Power and the Wyoming*

---

[17] Other possibly relevant parts from the 2014 Manual are set out at Facts ¶ 15.

*Commission. ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 [ ] (1989). Thus, the Alliance must show that Rocky Mountain Power and the Commission increased rates because of Wasatch's certification. *See Lujan*, 504 U.S. at 561-62 [ ]. Traceability is absent when we have to guess why the third parties acted as they did. *See Clapper v. Amnesty Int'l USA*, [568 U.S. 398, 413-14] (2013) (traceability is lacking because the respondents could only guess at the authority for the government's interception of their communications); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (traceability is lacking because it was "merely speculative whether these defendants caused Nova's decision").

*Id.* at 1036.

It is not entirely clear, but Plaintiffs may be arguing that local election boards would not have exercised their statutory authority–the supposed unbridled discretion afforded to them–but for the 2014 Manual. If so, Secretary Schwab's position is that in future elections the boards should abide by the Kansas Attorney General's interpretations of the involved election related statutes. *See* Facts ¶¶ 10 ("The Kansas Secretary of State's office accepts and approves the attorney general's interpretation of the statutes discussed in the formal opinion. Any prior inconsistent interpretations expressed by Secretary Schwab's predecessor secretaries of state or their subordinates do not express Secretary Schwab's views and no longer express the views of the Kansas Secretary of State's office."). *See also* Kan. Atty. Gen. Op. No. 2018-15, 2018 WL 5314193 (Oct. 22, 2018) (stating among other things: 1. mere presence of a person offering non-partisan voter assistance, or signage advertising the same, within 250 feet of the entrance to a polling place does not constitute electioneering so long as such activities do not include acts prohibited by K.S.A. 2018 Supp. 25-2430(a); 2. Whether offering of non-partisan voter

assistance and education constitutes the crime of electioneering depends on the facts of each individual case; 3. The election board of each polling place is authorized to guide, manage, direct, and oversee the polling place to ensure that voting is conducted in an orderly manner, citing K.S.A. 25-2413, K.S.A. 2018 Supp. 25-2415, 25-2430, 25-2810 and *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1879-80 (June 14, 2018) ("A polling place in Minnesota qualifies as a nonpublic forum under the Court's precedents. As such it may be subject to content-based restrictions on speech, so long as the restrictions are reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.")). This leaves to the local election boards–per K.S.A. 25-2810–to fashion whatever rules they find advisable, in the nonpublic areas they control, even if the rules may restrict speech, just so long as the restrictions are reasonable and viewpoint-neutral. Thus, the Secretary Schwab's position concerning the statute is not fairly traceable to a threat of enforcement which is the anchor to plaintiffs' constitutional claims about any specific rule or rules the local boards might adopt.

And, if actual implementation of policies regarding voting procedures by local boards is not relevant to plaintiffs' argument, again it is a statute which grants the discretion to the boards, not the Secretary of State. In fact, plaintiffs' point apparently is that just the fact of "unbridled discretion" granted to boards creates constitutional issues separate from the rules or policies they actually adopt. Thus, it is the statute that may chill speech or violate any due process right. In this respect, any past advice by a former Secretary of State or future conduct by Secretary

Schwab are not a cause of or linked to the statutory grant of supposed "unbridled discretion."

*Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), is instructive on this point. The court concluded that the plaintiff failed to show the required causal connection between its injury–the loss of minor patients who refused to obtain parental consent for an abortion–and the defendant Oklahoma public officials that oversaw certain state medical institutions. *Id.* at 1157. The court reasoned that the defendants were not charged with enforcing the statute in their official capacities, and that it was the statute's coercive effect, rather than the effect of the defendants' actual or threatened conduct, that caused the abortion provider's claimed injury-in-fact. *Id.* at 1157-58. The same is the case here, as it is the statute that enables or grants powers to the local boards to set rules and policies; it is the statute that causes the alleged injury-in-fact.[18]

> b.  *Ex Parte Young's exception to sovereign immunity is not applicable to Secretary Schwab as he has no duty to enforce and has not demonstrated any willingness to enforce K.S.A. 2018 Supp. 25-2810.*

---

[18] K.S.A. 2018 Supp. 25-2810 says the local election board "shall have control … under the sole supervision of the secretary of state, county election officer, deputy county election officers and the supervising judge." The scope of the supervision is not described in the statute. A first impression construction of the statute is necessary to determine whether the Secretary may veto adoption or otherwise prevent enforcement of local election board rules and policies. However, even if Sectary Schwab's "supervision," along with that of the county election officers, deputy county election officers and supervising judges, establishes his office has some connection to rules or policies local election boards adopt, supervision is not the source of any constitutional malady from local election board's alleged "unfettered discretion" granted under K.S.A. 2018 Supp. 25-2810. Plaintiffs do not charge that the Secretary of State has unfettered discretion.

The Eleventh Amendment analysis is similar but not identical to Article III's minimum for standing required to request an injunction. However, as discussed above, the Eleventh Amendment principle at issue concerning plaintiffs' challenge to K.S.A. 2018 Supp. 25-2810–independent of standing concerns–is that "state officials must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty" for the *Ex parte Young* exception to apply. *Peterson v. Martinez*, at 1205.

With perhaps accidental candor, plaintiffs allege that it is "the state's policy of unfettered discretion" that they challenge. ECF 001 ¶ 14 ("Mr. Clark engaged in non-electioneering speech within 250 feet of a polling location during the 2018 primary election and was improperly censored by a county election official ***under the state's policy of unfettered discretion***" (emphasis supplied). Their demands, in this lawsuit, verify that counts 4 & 5 are really against the state, not any individual official. The relief they demand is as follows:

> d. Enter declaratory judgment in favor of Plaintiffs and against Defendants adjudging that K.S.A. § 25-2810 is unconstitutional on its face and as applied to: (i) any activities that do not contribute to voter intimidation or actual interference with the election; (ii) the placement of signs on private property not included within the actual polling location; and/or to (iii) the placement of signs on public property not within the actual polling location;
>
> ***
> f. Enter injunctive relief enjoining Defendants from enforcing K.S.A. § 25-2810 against protected speech that does not contribute to voter interference or intimidation within the electioneering buffer zone outside of the polling location;

ECF 001, Prayer for Relief, ¶¶ d & f.

Secretary Schwab has neither the particular duty to enforce K.S.A. 2018 Supp. 25-2810 or demonstrated any willingness to exercise such a duty. Secretary Schwab does not create rules and policies under K.S.A. 2018 Supp. 25-2810. Facts ¶ 16. He and his office do not enforce or have the authority to enforce any rules or policies local election boards may adopt. *Id.* Instead, he has denied any intention to enforce rules or policies set under K.S.A. 2018 Supp. 25-2810. *Id.* Therefore, sovereign immunity bars plaintiffs' claims in counts 4 & 5 against him assuming for argument that standing exists to present the claims against the Secretary.

### *Conclusion*

For the reasons stated, the claims against Secretary Schwab should be dismissed for lack jurisdiction.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Arthur S. Chalmers
Arthur S. Chalmers, KS S. Ct. #11088
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Ph: (785) 368-8426
Fax: (785) 291-3707
Email: art.chalmers@ag.ks.gov
*Attorney for Defendant Schwab*

26

CERTIFICATE OF SERVICE

This is to certify that on this 25th day of July, 2019, I electronically filed the

above and foregoing with the Clerk of the Court using the Court's Electronic Filing

System, which will send a notice of electronic filing to all counsel of record:

Lauren Bonds
lbond@aclukansas.org

Zal Kotval
Zchroff@aclukansas.org

Mark P. Johnson
mark.johnson@dentons.com

       *Attorneys for Plaintiff*

Cynthia Dunham
cynthia.dunham@jocogov.org

Donald D. Jarrett
don.jarrett@jocogov.org

       *Attorneys for Defendant*
       *Ronnie Metsker*

                  s/ Arthur S. Chalmers
                  Arthur S. Chalmers