## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JAMES W. CLARK, et al.,**

      **Plaintiffs,**

      **v.**

**DEREK SCHMIDT, in his official capacity as the Attorney General of Kansas, et al.,**

      **Defendants.**

**Case No. 2:19-cv-02297-HLT**

### MEMORANDUM AND ORDER

This is a 42 U.S.C. § 1983 action challenging the constitutionality of a Kansas election law and a county election policy. All parties move for summary judgment. The principal issues before the Court are (1) whether the 250-foot buffer zone created by Kansas's electioneering statute violates the First Amendment either facially or as applied and (2) whether the discretion that the Johnson County election policy affords poll workers violates the First and Fourteenth Amendments.

On the first issue, the Court finds that the facial challenge to the Kansas electioneering statute fails under the reasoning in *Burson v. Freeman* and that any as-applied challenges fail for lack of standing. On the second issue, the Court finds that any challenge to the Johnson County election policy fails for lack of standing. The Court grants Defendants' motions for summary judgment, denies Plaintiffs' motion for summary judgment, enters judgment in Defendants' favor on Count 1 and dismisses without prejudice Counts 2, 4, and 5.[1]

---

[1]   Plaintiffs previously abandoned Count 3. Doc. 86 at 14 n.3.

# I.   BACKGROUND[2]

Plaintiffs James Clark, Roseanne Rosen, Kansas for Change Inc., and Daniel DeGroot sue the Kansas Attorney General and the Johnson County Election Commissioner. Derek Schmidt is the Attorney General of Kansas. The Attorney General has direct enforcement authority over election crimes. Connie Schmidt is the Johnson County Election Commissioner. In that role, she is responsible for conducting elections in Johnson County in compliance with all election laws, including K.S.A. § 25-2430 and K.S.A. § 25-2810, and she supervises and has control over polling places in Johnson County.

## A.   Kansas's Electioneering Statute

Electioneering in Kansas is covered by K.S.A. § 25-2430 ("electioneering statute"). Nearly all states have statutes that prohibit electioneering around polling places, though the size of the so-called buffer zone differs. Kansas is one of a few states with an electioneering buffer zone of 250 feet or more. Kansas adopted the Australian ballot system in 1893, and adopted its first electioneering statute shortly after, which established a 100-foot buffer zone. The electioneering statute was amended in 1965 to create a 250-foot buffer zone. No government records can be found that express the reason for the expansion of the electioneering buffer zone from 100 feet to 250 feet. K.S.A. § 25-2430, the current codification of the electioneering statute, in relevant part reads:

> Electioneering is knowingly attempting to persuade or influence eligible voters to vote for or against a particular candidate, party or question submitted. Electioneering includes wearing, exhibiting or distributing labels, signs, posters, stickers or other materials that clearly identify a candidate in the election or clearly indicate support or opposition to a question submitted election within any polling place on election day or advance voting site during the time period allowed by law for casting a ballot by advance voting or within a

---

[2]   At issue are three motions spanning eleven briefs (466 pages, not including exhibits) all of which largely address the same issues and the same facts. Although voluminous briefing cannot always be avoided, especially in cases involving constitutional questions, the repetitive and at times argumentative approach to the facts has complicated resolution of this matter. From that context, the Court discerns the following uncontroverted facts.

radius of 250 feet from the entrance thereof. Electioneering shall not
include bumper stickers affixed to a motor vehicle that is used to
transport voters to a polling place or to an advance voting site for
the purpose of voting.

Electioneering is a class C misdemeanor. Kansas also has other election-crime statutes. *See, e.g.*,

K.S.A. § 25-2413 (disorderly election conduct); K.S.A. § 25-2415 (intimidation of voters).

### B.   Application and Enforcement of K.S.A. § 25-2430 by Certain Counties

Johnson County measures the electioneering buffer zone from the entrance of a polling

place with a 250-foot piece of twine. Johnson County prohibits signs regarding a candidate or issue

on the ballot within 250 feet of a polling location's entrance, including signs on private property.

Johnson County has requested law-enforcement assistance regarding possible electioneering

violations. Johnson County also prohibits verbal exit polling. At the polling place at 10551 South

Quivira Road in Johnson County, speakers standing outside the buffer zone are unable to interact

with voters walking between their vehicles and the entrance. Speakers and voters cannot

meaningfully interact or converse at 250 feet. Poll workers are instructed by the Johnson County

election office to pull up candidate signs and lay them on the ground so that they are not visible to

voters, if the signs are within the buffer zone. Depending on the nature of the conversation and

what was being said and how loud, a person talking on a cell phone in a polling place could be

electioneering or just generally disruptive of a polling place. The Johnson County Election

Commissioner does not supervise or have any authority over polling places outside of Johnson

County.

Douglas County measures the 250-foot electioneering buffer zone using an aerial

geographic information system ("GIS") map. It measures from each separate entrance to a polling

location. At the entrance to the United Way polling place in Douglas County, speakers standing

outside the buffer zone are unable to interact with voters walking to the polling place from their

vehicles. Douglas County has asked homeowners within the buffer zone to remove campaign signs on their private property; it trains its poll workers to look for signs within the buffer zone at the beginning of each voting day. Douglas County might ask someone wearing a shirt with an obvious political symbol on it to cover it up. Douglas County also considers partisan election-protection work to be electioneering but permits media interviews within the buffer zone. Douglas County also once discussed the removal of brochures from the Douglas County Treasurer's Office, which was in a building with a polling place, because the brochures related to a ballot issue. Douglas County has twenty days of early voting at the Douglas County Clerk's Office, which is in downtown Lawrence near a thoroughfare. The buffer zone for that polling location includes surrounding buildings.

Sedgwick County measures the 250-foot electioneering buffer zone using an aerial GIS map. Election officials in Sedgwick County will ask homeowners within the buffer zone to remove campaign signs, and election officials will remove the signs if the homeowner refuses. Sedgwick County has also asked business owners inside the buffer zone to remove campaign signs from windows during early voting. Sedgwick County prohibits verbal interviews within the buffer zone, including verbal exit interviews. Sedgwick County election workers have asked candidates to stop doing speeches and interviews within the buffer zone and have prohibited political rallies within the buffer zone on early-voting days. Sedgwick County election officials do not consider soliciting signatures for a petition around a polling place to be electioneering under K.S.A. § 25-2430 if the petition does not reference any question on the ballot.

In 2018, a Clay County official asked then-Governor Jeff Colyer to move a campaign event that was within the electioneering buffer zone of a polling place on an advance-voting day. Clark County has also prosecuted a candidate for violation of K.S.A. § 25-2430. At some point in

November 2018, Riley County stated an intention to prohibit all election-protection signage at its polling locations. There was communication between the Secretary of State's office, Riley County officials, and the American Civil Liberties Union ("ACLU") about whether the signs were permissible under K.S.A. § 25-2430. It is unclear what action Riley County ultimately took.

C.      **Attorney General Opinion No. 2018-15**

At some point, it was disputed whether <u>non</u>-partisan voter-assistance activities were considered electioneering under K.S.A. § 25-2430. On October 22, 2018, the Kansas Attorney General issued Attorney General Opinion No. 2018-15, which clarified that non-partisan voter-assistance activities or signage within 250 feet of a polling entrance does not constitute electioneering under K.S.A. § 25-2430. This is because those activities would not be "attempting to persuade or influence eligible voters to vote for or against a particular candidate, party or question submitted." Likewise, non-partisan voter assistance does not generally meet the definition of disorderly election conduct under K.S.A. § 25-2413 or voter intimidation under K.S.A. § 25-2415. The opinion does not directly address collecting petition signatures on election days or <u>partisan</u> voter-assistance efforts. The opinion is the Attorney General's only authoritative interpretation of the statute and is followed by the Kansas Secretary of State, Johnson County, Douglas County, and Sedgwick County.

Attorney General Opinion No. 2018-15 further states: "However, even though the mere presence of a person offering non-partisan voter assistance, or signage advertising the same, generally would not constitute electioneering, disorderly election conduct, or intimidation of voters, that does not mean a person has the right to engage in those activities at a polling place." It states that, as non-public forums, polling places are amenable to reasonable restrictions on speech.

Johnson County has adopted and abides by Attorney General Opinion No. 2018-15 and does not exclude non-partisan voter-assistance workers. But the parties dispute whether practices reflect that position. During the November 2019 election, a Johnson County election officer told an individual that she could not stay inside the polling place because she was not an authorized poll agent, though it is unclear whether she was able to stay outside, but within the buffer zone. Officials also removed a reporter conducting exit polling.

### D.    Johnson County's Application of K.S.A. § 25-2810

Under K.S.A. § 25-2810 ("control statute"), "[e]ach election board shall have control of its voting place and election procedure under the sole supervision of the secretary of state, county election officer, deputy county election officers and the supervising judge." A Kansas Election Standards manual, along with Attorney General Opinion No. 2018-15, reiterates the authority of election officials to exercise control over polling locations, including taking steps to avoid nuisances or distractions for voters.[3]

A Johnson County representative testified that, under K.S.A. § 25-2810, a supervising election judge can exclude someone from a polling location if the person's activity is deemed improper. Election workers in Johnson County receive four hours of training before each election, and supervising judges and assistant supervising judges receive an additional one-and-a-half hours of training. The training curriculum is designed by the Kansas Secretary of State. Field supervisors oversee up to ten polling locations. In the event someone is electioneering within the 250-foot buffer zone, Johnson County instructs supervising judges to handle the situation, and if necessary, the field supervisor is asked to assist, or they can call the Johnson County Election Office for

---

[3]   The manual is available at https://www.sos.ks.gov/elections/19elec/2019-Kansas-Election-Standards-Chapter-II-Election-Administration.pdf. *See* Doc. 92 at 27.

further assistance or advice. Johnson County election officials have called law enforcement at least twice for possible electioneering and asked law enforcement to monitor polling places.

### E.    Plaintiffs

#### 1.    James Clark

James Clark is a Douglas County resident. Clark testified at his deposition that it was "possible" or "conceivabl[e]" that he had campaigned within 250 feet of a polling location. In his declaration, he averred that he has campaigned within 250 feet of a polling location, though he was unaware at the time that the buffer zone was 250 feet. On August 7, 2018, Clark set up a lawn chair about 100 feet from the entrance of his polling place in Lawrence, Kansas, to serve as a "neutral observer." He was not advocating for any issue or candidate but planned on referring anyone who exited the polling place looking angry or confused to an ACLU hotline. A poll worker told Clark to leave the United Way polling location because he was allegedly violating the electioneering statute. From outside the 250-foot buffer zone, Clark was unable to or it would have been difficult to have contact with voters. After he was asked to leave, he decided to leave because he did not want to risk arrest. Clark believes that his activity as a "neutral observer" would not be considered electioneering now given Attorney General Opinion 2018-15, to the extent it remains in effect. But he is hesitant to engage in either political advocacy or public-information efforts on election days in the future.

Clark testified that, "[p]ossibly, yes," he would like to ask private landowners near polling places to put up signs. Although he had no concrete plans to distribute leaflets or put up yard signs within the buffer zone, he "would desire that [he] should not be forbidden to do" so within 250 feet of a polling place. Clark has never resided in Johnson County and has never been within 250

feet of a Johnson County polling place on an election day or advance-voting day. Clark has never been threatened with prosecution for electioneering.

### 2. Rosanne Rosen

Rosanne Rosen is a Johnson County resident. On August 7, 2018 (before issuance of Attorney General Opinion No. 2018-15), Rosen was serving as an election-protection worker within 250 feet of her polling location at 10551 South Quivira Road. Rosen did not approach any voters entering the polling location, nor did she display any materials in support or opposition of a candidate, party, or issue on the ballot. She held a sign that read "ELECTION PROTECTION VOLUNTEER 1-866-OUR-VOTE," and which had a picture of the Statue of Liberty. Rosen believed her conduct was not electioneering, but she did not know for certain. A poll worker told Rosen that what she was doing was considered electioneering and told her to move outside the 250-foot buffer zone. From that distance, Rosen was too far away to see anyone, talk to anyone, or have anyone see her sign. She stayed for about 10-15 minutes more and then left because it was ineffective for her to be that far away. No one threatened Rosen with arrest or prosecution for these actions.

Rosen would like to engage in similar efforts within the buffer zone in the future but is afraid she will be excluded by a poll worker, even if her activities were approved by the Johnson County Election Commission, because a poll worker could still conclude she was electioneering. Rosen would also like to do partisan campaigning at or around polling places.

### 3. Kansas for Change Inc.

Kansas for Change Inc. ("KFC") is a nonprofit organization focused on cannabis reform, which includes taking positions on candidates, parties, and issues as they relate to that focus. KFC runs petition drives in Sedgwick County seeking marijuana-reform ballot questions and has run

those petition drives outside of polling places on an election day. In April 2017, KFC volunteers were told that they couldn't be within 250 feet of a polling place while gathering signatures for petitions, and election workers called police. The volunteers were ultimately allowed to stay and continue collecting signatures. Since then, no one with the Wichita police has suggested that gathering signatures for petitions constitutes electioneering.

KFC would like to engage in political rallies near polling locations across the state, but it is difficult to engage with voters leaving polling places from 250 feet away, and it is hesitant because of the 2017 incident involving law enforcement. KFC may assist with petition drives for election initiatives about marijuana laws in other Kansas cities in the future, including possibly in Johnson County, and would help collect signatures whenever possible. But it has not conducted any petition drives since May 2017. Nor has KFC circulated any petitions in Johnson County or been within 250 feet of a Johnson County polling place on an election day or advance-voting day, been excluded from a buffer zone at a Johnson County polling location, or been threatened with prosecution for electioneering in Johnson County.

### 4. Daniel DeGroot

Daniel DeGroot is a Sedgwick County resident who has participated in petition drives outside of polling locations. He is not a member of KFC and has never participated in the Kansas Election Protection Program. On April 11, 2017, DeGroot went to a polling location to collect signatures, and when he arrived, he saw law enforcement there. Other volunteers had been collecting signatures before he arrived and some people helping with the election had told the other volunteers to leave and called the police. DeGroot was told that, after the police arrived, it was decided that the volunteers were not electioneering and that they could stay. DeGroot did not talk with the police or overhear conversations with them, nor was he threatened or told he was

electioneering. DeGroot remained at the location and collected signatures for about three-and-a-half hours.

DeGroot wishes to gather signatures for petitions and engage with voters on political and partisan issues within 250 feet of a polling location, though he has not done so before or after April 11, 2017. DeGroot's declaration stated that officials in Sedgwick County "have recently allowed community members to conduct these activities closer to a polling place without disruption," but he will not feel comfortable doing so until he can confirm his actions are lawful.

DeGroot has never resided in Johnson County and has never been within 250 feet of a Johnson County polling place on an election day or advance-voting day. Nor has DeGroot been threatened with prosecution for election crimes, including electioneering, in Johnson County. But he is suing the Johnson County Election Commissioner because if any issues he was passionate about were to come up in Johnson County, he would "have issues" with going out on election day to tell people about it.

Neither the Johnson County Election Commissioner nor anyone in the Johnson County Election Office has attempted to prosecute Clark, Rosen, DeGroot, or KFC or any of its members for any election crime under Kansas law.

### F.    Claims

There are four claims at issue. First, all Plaintiffs, against both Defendants, allege that the electioneering statute's 250-foot buffer zone violates the First Amendment and is facially invalid (Count 1). Second, Clark, KFC, and DeGroot sue the Attorney General only, alleging that the electioneering statute violates the First Amendment as applied to them (Count 2) with regard to conduct they would like to engage in in the future.

The remaining two claims are asserted by Rosen against the Johnson County Election Commissioner only. Rosen contends that the policy maintained by Johnson County under K.S.A. § 25-2810, the control statute, is facially invalid under the First Amendment (Count 4) and the Fourteenth Amendment (Count 5).

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation omitted).

Where parties file cross-motions for summary judgment, each motion is viewed separately in a light most favorable to the non-moving party. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016). The denial of one motion does not require the grant of the other. *Id.* at 907. The Court notes that, in this case, the parties' motions generally address the same issues.

## III.    ANALYSIS

### A.     Count 1 – Facial Challenge to K.S.A. § 25-2430

Count 1 is a facial challenge to K.S.A. § 25-2430, the electioneering statute, brought by all Plaintiffs against both Defendants. Plaintiffs argue that Defendants have failed to justify why a 250-foot electioneering buffer zone is necessary or appropriately tailored. Plaintiffs also contend

that the statute is facially overbroad because it prohibits more speech than is necessary to accomplish any legitimate goals. Doc. 86 at 14-15. In response, Defendants contend Plaintiffs lack standing and, even if they have standing, the Supreme Court decision in *Burson v. Freeman* controls the issue and renders the statute constitutional.

### 1.     Standing of Plaintiffs to Facially Challenge K.S.A. § 25-2430

Defendants initially argue that Plaintiffs lack standing to make a facial challenge. The Court must resolve this issue before reaching the merits of Count 1 because courts are not "free-wheeling enforcers of the Constitution and laws." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006). Instead courts are limited to actual cases and controversies, which requires a plaintiff to have standing. *Id.*

The burden of demonstrating standing is on a plaintiff. *See id.* At the summary-judgment stage, a plaintiff must set forth affidavits or other evidence demonstrating specific facts showing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Standing requires that a plaintiff have an actual stake in the controversy. *See Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). A plaintiff can show this stake by demonstrating an injury, causation, and redressability. *Id.*

The Court notes that Plaintiffs do not appear to seek any damages or rulings about their past conduct under K.S.A. § 25-2430. In other words, they do not seek relief for any instances in which they were asked or told to leave a polling place in the past. *See* Doc. 86 at 20-21. Instead, they seek prospective relief based on a future enforcement of the electioneering statute against them.[4]

---

[4]   In their motion for summary judgment, Plaintiffs do not allege any injury based on a chilling of their First Amendment conduct in relation to K.S.A. § 25-2430. They simply allege that they would like to engage in activity that violates that statute and face a credible threat of enforcement. Doc. 91 at 17-19. Although they do discuss a chilling in later briefing, the Court notes that standing based on chilling, like standing based on a future enforcement, turns on the existence of a credible threat of future prosecution. *See Ward*, 321 F.3d at 1267; *Initiative & Referendum*, 450 F.3d at 1089.

Threatened enforcement of a statute "satisfies the injury-in-fact requirement where [a plaintiff] alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotation omitted); *see also D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004) ("When a plaintiff challenges the validity of a criminal statute under which he has not been prosecuted, he must show a real and immediate threat of his future prosecution under that statute to satisfy the injury in fact requirement." (internal quotation omitted)). Accordingly, the Court must determine whether Plaintiffs have (1) an intention to engage in activity prohibited by the electioneering statute, and (2) face a credible threat of enforcement as a result.

### a.     Intention to Engage in Activity Prohibited by K.S.A. § 25-2430

On the first point, the Court finds that all Plaintiffs have expressed a desire to engage in future partisan electioneering within 250 feet of a polling place—activity that is both constitutionally protected and prohibited by K.S.A. § 25-2430. *See Susan B. Anthony List*, 573 U.S. at 162 ("Because petitioners' intended future conduct concerns political speech, it is certainly affected with a constitutional interest." (internal quotation omitted)).

### b.     Credible Threat of Enforcement[5]

On the second point, the Court finds that at least some Plaintiffs have shown a credible threat of enforcement. A credible threat of enforcement can be shown where the statute at issue prohibits the activity the plaintiff wishes to do and the potential for enforcement has not been disavowed. *Sup. Ct. of N.M.*, 839 F.3d at 901. Courts also frequently look at whether a plaintiff

---

[5]   K.S.A. § 25-2430 carries criminal consequences, but Plaintiffs may also challenge it to the extent it will be administratively enforced against them. *See Susan B. Anthony List*, 573 U.S. at 165 (noting that "administrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review").

has engaged in similar conduct targeted by the law in the past, *see Cole v. Goossen*, 402 F. Supp. 3d 992, 1005 (D. Kan. 2019) (discussing cases), or whether other facts lend credibility to the threat of enforcement, *see Susan B. Anthony List*, 573 U.S. at 159-61 (discussing cases). "[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." *Id.* at 164 (internal quotation omitted); *cf. Initiative & Referendum*, 450 F.3d at 1089 (noting that past activities, while not indispensable, is a consideration that "provides roughly the same level of concreteness and particularity that our precedents have demanded in cases involving the threat of criminal prosecution"). Where a plaintiff has never been threatened with enforcement of a statute in the past, or future prosecution has been disavowed in some way, there is no standing. *D.L.S.*, 374 F.3d at 974.

At least some Plaintiffs have demonstrated, through testimony and affidavits, that they have previously engaged in conduct that warranted at least some level of enforcement of the statute against them by the Attorney General. Specifically, Clark and Rosen have both been asked to leave buffer zones. And KFC's volunteers have had police called on them for gathering petition signatures, although the volunteers could continue.[6] By contrast, DeGroot himself has never been the subject of any enforcement under K.S.A. § 25-2430.

Based on this, and on the undisputed facts about how various counties enforce K.S.A. § 25-2430, the Court finds that at least Clark and Rosen (and potentially KFC) have established a credible threat of future enforcement of the statute should they engage in electioneering within the buffer zone. *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) (declining to address standing of all plaintiffs where at least one plaintiff had standing). Accordingly, some

---

[6]   The Court notes that no party addresses whether KFC, as an <u>organization</u>, has standing to challenge any provision based on a credible threat of enforcement as to its <u>members</u>. But as discussed above, because at least some Plaintiffs have demonstrated standing to facially challenge K.S.A. § 25-2430, the Court need not resolve this issue.

Plaintiffs have standing to challenge the constitutionality of K.S.A. § 25-2430 against the Attorney General. *See Petrella v. Brownback*, 697 F.3d 1285, 1293-94 (10th Cir. 2012) (noting that "the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of that statute"); *see also* K.S.A. § 25-2435 (stating that the Kansas Attorney General has authority to prosecute election crimes).

But only Rosen has standing to challenge K.S.A. § 25-2430 against Johnson County. Of Plaintiffs, only Rosen lives in Johnson County, only Rosen has been excluded from polling places by Johnson County election workers in the past, and only Rosen has expressed a desire to do partisan advocacy—activity prohibited by the statute—in Johnson County in the future. By contrast, DeGroot and KFC have alleged only a vague desire to engage in partisan advocacy in Johnson County, should the opportunity arise, and Clark has not asserted any intention to do anything in Johnson County at all. Accordingly, only Rosen faces a credible threat of enforcement of K.S.A. § 25-2430 by Johnson County officials sufficient to establish standing.[7]

## 2.  Merits of Plaintiffs' Facial Challenge to K.S.A. § 25-2430

Because at least some Plaintiffs have standing to assert a facial challenge against both Defendants, the Court turns to the merits and *Burson v. Freeman*.

### a.  *Burson v. Freeman*

The Supreme Court squarely addressed the constitutionality of polling place buffer zones in *Burson v. Freeman*, which upheld Tennessee's 100-foot "campaign-free zone" around polling

---

[7]  Plaintiffs also claim they have standing "as listeners being deprived of information from voters." Doc. 91 at 20-21. But standing as a listener turns on the existence of a "willing speaker." *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1115 (10th Cir. 2008). All Plaintiffs point to, however, are hypothetical conversations they want to have with unnamed voters. Doc. 91 at 21. This is insufficient to establish "listener" standing.

places. 504 U.S. 191, 193-94 (1992).[8] The Supreme Court noted that the speech restricted by the Tennessee statute was political speech, which is clearly protected by the First Amendment. *Id.* at 196. The statute was also not content-neutral because it prohibited an entire topic—speech related to political campaigns. *Id.* at 197. Accordingly, because the statute was "a facially content-based restriction on political speech in a public forum," it was subject to "exacting scrutiny," meaning it must be necessary to serve a compelling state interest and be narrowly tailored to serve that end. *Id.* at 198. But the Supreme Court noted that the issue was "a particularly difficult reconciliation: the accommodation of the right to engage in political discourse with the right to vote—a right at the heart of our democracy." *Id.*

Tennessee asserted two compelling interests for its buffer-zone law: protecting citizens' right to vote freely and ensuring that elections are conducted with integrity—interests that the Supreme Court found "obviously are compelling ones." *Id.* at 198-99. The Supreme Court then looked to whether the law was necessary to serve these compelling interests. Although acknowledging that laws rarely survive strict scrutiny, *Burson* found that "an examination of the evolution of election reform, both in this country and abroad, demonstrates the necessity of restricted areas in or around polling places." *Id.* at 200. This was largely based on the Supreme Court's detailed recitation of the history of voting procedures in the United States. To address ever increasing problems of voter intimidation and election fraud, nearly all states adopted the so-called Australian ballot system, which included creation of an official ballot listing all candidates and the creation of polling booths with separate voting compartments open only to election officials and voters. *Id.* at 202-04. By 1900, most states had adopted statutes banning electioneering near polling

---

[8]   *Burson* is a plurality opinion. Justice Scalia concurred in the judgment, but he would have applied a less-exacting standard. Because his rationale was broader than the plurality opinion, the Court looks to the plurality opinion—as the narrowest reasoning—for guidance. *See Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1217 n.9 (11th Cir. 2009).

places, including Kansas. *See id.* at 215 n.1 (Scalia, J., concurring); *see also Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1882-83 (2018) (noting that nearly every state adopted voting reforms in the late 1800s, including viewpoint-neutral restrictions on election day speech in and around polling places).

By the time the Supreme Court decided *Burson*, all 50 states limited access around polling places to some degree. *Burson*, 504 U.S. at 206. *Burson* concluded that "this widespread and time-tested consensus demonstrates that some restricted zone is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud." *Id. Burson* also noted that "the link between ballot secrecy and some restricted zone surrounding the voting area is not merely timing—it is common sense." *Id.* at 207.

Having found a buffer zone around polling places to be plainly necessary based on history and common sense, the Supreme Court turned to the issue of tailoring. *Id.* at 208 ("The real question then is <u>how large</u> a restricted zone is permissible or sufficiently tailored." (emphasis in original)). On this point, *Burson* deviated from traditional strict-scrutiny analysis and instead applied a modified burden. *Id.* at 209 n.11. Notably, the Supreme Court did <u>not</u> require Tennessee to put on proof that the 100-foot buffer zone was "perfectly tailored to deal with voter intimidation and election fraud." *Id.* at 209. Rather, the Supreme Court noted such a statute need only be reasonable and not "significantly impinge" on any constitutionally protected rights. *Id.* (internal quotation omitted). *Burson* concluded that a "minor geographic limitation" on electioneering speech around polling places was not a significant impingement and upheld Tennessee's statute. *Id.* at 210.

### b.      Analysis of K.S.A. § 25-2430

Turning to this case, the Court finds *Burson* to be both binding and persuasive authority for upholding K.S.A. § 25-2430. It is undisputed that, in the late 1800s, Kansas adopted the same Australian ballot reforms discussed in *Burson* to ensure fair elections, curb vote buying and selling, and avoid voter interference and intimidation. Doc. 87-1 at 19; Doc. 95 at 7; *see also* Doc. 86 at 10 (asserting that the electioneering statute serves the compelling interest of preventing voter confusion and undue influence and in preserving election integrity).[9] And the Kansas statute and the Tennessee statute share a similar genesis. Tennessee originally had a 50-foot buffer zone. It was later revised to 30 feet in 1901, and then expanded to 100 feet in 1967, and again revised in 1972 as part of a slate of election reforms. *Burson*, 504 U.S. at 205-06. Although Kansas's numbers have been different, its electioneering law was developed and revised like Tennessee's statute. Although Kansas's buffer zone is larger than the buffer zone in Tennessee, the Court notes that the 250-foot buffer zone in Kansas was adopted nearly 60 years ago—long before *Burson*—and has apparently stood unchallenged at that size until now. Given these considerations, the Court sees no reason why the *Burson* analysis, including its emphasis on history and common sense, would not apply equally to K.S.A. § 25-2430.

Against this backdrop, Plaintiffs make three arguments challenging the constitutionality of K.S.A. § 25-2430.[10] First, they argue that Defendants have failed to justify the size of Kansas's electioneering buffer zone. Second, they argue the electioneering statute is not appropriately

---

[9]   It is less clear to what extent the parties agree that the electioneering statute was adopted as part of Kansas's adoption of the Australian ballot reforms. Regardless, the Court notes that Plaintiffs' arguments almost exclusively focus on the <u>size</u> of the buffer zone and whether it is narrowly tailored, not its existence altogether. Those arguments are discussed below.

[10]   Although the Court focuses on the arguments raised by Plaintiffs in their motion, Defendants have also moved for summary judgment in their favor, addressing essentially the same issues.

tailored. And third, they argue the statute is unconstitutionally overbroad. The Court addresses each argument.

### i.        Size

Plaintiffs argue that Defendants have failed to justify the specific size of K.S.A. § 25-2430's electioneering buffer zone, which they argue was a key point in *Burson* and a requirement imposed by other courts in evaluating buffer zones that exceed 100 feet.

First, the Court disagrees with Plaintiffs that *Burson* tied the constitutionality of a buffer zone to its size, or that it required any specific justification for a particular size of buffer zone. Doc. 91 at 24-28. To the contrary, *Burson* specifically rejected any "litmus-paper test" to separate valid state election laws from invalid ones. *Burson*, 504 U.S. at 210-11 (internal quotation omitted). On the issue of whether a buffer zone could be smaller, the plurality in *Burson* concluded that the <u>size</u> of a buffer zone was not a question of "constitutional dimension," noting that the choice of a larger, as opposed to smaller buffer zone, was not "an unconstitutional choice." *Id.* at 210 (internal quotation omitted).

The *Burson* plurality did note that "[a]t some measurable distance from the polls, of course, governmental regulation of vote solicitation could effectively become an impermissible burden akin to the statute struck down in [*Mills v. Alabama*]." *Id.* at 210. But the Court does not read this, as Plaintiffs do, to conclude that the 250-foot buffer zone adopted by Kansas crosses the line. Rather, *Burson* pointed to instances where conduct was banned altogether. *See Mills v. Alabama*, 384 U.S. 214, 216 (1966) (addressing a statute that made it a crime "to do any electioneering or to solicit any votes . . . on the day on which the election . . . is being held."); *Meyer v. Grant*, 486 U.S. 414, 417 (1988) (involving an absolute prohibition on the use of paid signature gatherers). Reliance on those cases suggests that *Burson*'s line-drawing "[a]t some measurable distance" did

not arbitrarily fall between 100 and 250 feet. *See Burson*, 504 U.S. at 210 (noting that a difference in size "is a difference only in degree, not a less restrictive alternative in kind").

Second, the Court is not persuaded by Plaintiffs' reliance on two decisions from the Sixth Circuit. They argue those cases require Defendants to come forward with specific evidence justifying any buffer zone in excess of 100 feet, beyond the "historical" and "common sense" reasons outlined in *Burson*. Doc. 91 at 25. The Court has reviewed those cases. The first, *Anderson v. Spear*, involved a challenge to a host of Kentucky's election laws, including its 500-foot electioneering buffer zone. 356 F.3d 651, 656 (6th Cir. 2004). That statute had been expanded from 50 feet to 500 feet in 1987, and evidence in the record suggested that the 500-foot buffer zone had been passed specifically to eliminate as much electioneering in the entire state as possible, and for reasons largely unrelated to preventing voter intimidation and voter fraud. *Id.* at 657-59, 661-62.

In the second, *Russell v. Lundergan-Grimes*, the Sixth Circuit evaluated the successor law enacted by Kentucky in response to the decision in *Anderson*. 784 F.3d 1037, 1050 (6th Cir. 2015). The successor law created a 300-foot buffer zone. *Id.* at 1043. But even though Kentucky's previous law had been struck down in *Anderson* for lack of sufficient justification, Kentucky failed in *Russell* to "present any evidence—or even a non-evidentiary policy argument" that would justify its revised 300-foot buffer zone. *Id.* at 1053.[11]

---

[11] Plaintiffs also rely on *Calchera v. Procarione*, 805 F. Supp. 716 (E.D. Wisc. 1992). That case involved a 500-foot buffer zone in Wisconsin. *Id.* at 717. In finding the statute unconstitutional, the court was persuaded by the fact that the buffer zone was significantly larger than the Tennessee statute (and, the Court notes here, twice as large as Kansas's buffer zone), and by the fact that the state of Wisconsin had opted not to defend the statute. *Id.* at 720. In another post-*Burson* Circuit Case, the Fifth Circuit upheld Louisiana's 600-foot buffer zone, in part based on evidence that a previous 300-foot buffer zone had failed to eliminate problems of voter intimidation and harassment in Louisiana. *See Schirmer v. Edwards*, 2 F.3d 117, 122 (5th Cir. 1993).

The Court finds both cases distinguishable. Unlike here, the statute in *Anderson* had been expanded ten-fold relatively recent to that decision, and for reasons unrelated to preventing voter intimidation and fraud. And, in *Russell*, the state failed to offer any justification for the revised law even though its successor had recently been struck down for having insufficient justification. Although Plaintiffs argue that *Anderson* and *Russell* stand for the proposition that any buffer zone larger than 100 feet must be justified beyond the "historical" and "common sense" reasons outlined in *Burson*, Doc. 91 at 25, the Court disagrees. The circumstances in those cases were distinct, and the rationales in those cases are not applicable here, especially considering *Burson*.

The buffer zone in Kansas is smaller than both statutes struck down by the Sixth Circuit. Kansas's electioneering law has also stood unchallenged in its current form for nearly 60 years— a characteristic of most buffer-zone laws that *Burson* specifically cited to excuse states from having to put on specific proof of justification. *Burson*, 504 U.S. at 208. And in contrast to the statutes in *Anderson* and *Russell*, Kansas's statute was developed on largely the same path as the Tennessee statute. Accordingly, the Court follows *Burson*'s conclusion that a "long history, a substantial consensus, and simple common sense show that some restricted zone around polling places is necessary to protect that fundamental right [of an election free from the taint of intimidation and fraud]." *Id.* at 211. Kansas has long required a 250-foot buffer zone around polling places, and under *Burson*, the Court cannot find "that this is an unconstitutional choice." *Id.* at 210.

### ii.     Tailoring

Plaintiffs' second argument is that the electioneering statute is not sufficiently tailored. Specifically, they argue that the statute overserves its stated interest because it applies to "passive, non-disruptive speech" that could not confuse or intimidate voters; that it prohibits speech not aimed at or heard by voters en route to polling places; and that its size effectively eliminates all

communications with voters who <u>are</u> en route to polling places. Doc. 91 at 29-34. But notably, Plaintiffs fail to address how a smaller buffer zone, like the one upheld in *Burson*, would not have many of these same issues. As to passive speech, the Supreme Court recently noted that a state "may reasonably take steps to ensure that partisan discord not follow the voter up to the voting booth, and distract from a sense of shared civic obligation at the moment it counts the most," including by prohibiting "displays that do not raise significant concerns in other situations," such as nondisruptive expression. *Mansky*, 138 S. Ct. at 1887-88. Nor does the Court agree that an extra 150 feet of buffer zone around polling places transform the state of Kansas into an electioneering-free zone altogether. To the extent it makes it difficult to communicate with voters on their way to vote, the Court notes that is precisely the reason for the statute. *See id.* at 1887 ("Casting a vote is a weighty civic act, akin to a jury's return of a verdict, or a representative's vote on a piece of legislation. It is a time for choosing, not campaigning.").

Importantly, *Burson* did not require that a buffer-zone law be "perfectly tailored to deal with voter intimidation and election fraud." *Burson*, 504 U.S. at 209. It noted that the Supreme Court "never has held a State to the burden of demonstrating empirically the objective effects on political stability that are produced by the voting regulation in question." *Id.* at 208-09 (internal quotation and brackets omitted). This is because requiring a state to perfectly tailor election laws would require it to allow incremental damage to its political system before arriving at the proper level of regulation. *See id.* at 209.

Instead, the Supreme Court opted for a degree of deference. *Cf. Mansky*, 138 S. Ct. at 1888 (noting that a state's judgment about polling-place protection laws "is entitled to respect"); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96 (1986) ("Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight

rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights."); *Browning*, 572 F.3d at 1220 ("The State wants peace and order around its polling places, and we accord significant value to that desire for it preserves the integrity and dignity of the voting process and encourages people to come and to vote."). In recognition of this deference, the Supreme Court only required that any buffer-zone law not significantly impinge on constitutionally protected rights. *Burson*, 504 U.S. at 209-10. For the reasons discussed above, the Court does not find that Kansas's buffer-zone law—even at 250 feet—crosses that line.

### iii.     Overbreadth

Plaintiff's third argument is that K.S.A. § 25-2430 is unconstitutionally overbroad because it has substantially more unconstitutional applications than constitutional applications. Facial challenges based on overbreadth are disfavored. *United States v. Brune*, 767 F.3d 1009, 1019 (10th Cir. 2014). Further, the Court notes that statutes are presumed constitutional. *United States v. Plotts*, 347 F.3d 873, 877 (10th Cir. 2003). In the First Amendment context, a law is facially overbroad if the "law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Brune*, 767 F.3d at 1018 (internal quotation omitted).

As an example of an "unconstitutional application" of K.S.A. § 25-2430, Plaintiffs point to enforcement of the law against individuals on their own property. Doc. 91 at 35. But even accepting—as the Court does for purposes of argument only—that electioneering buffer-zone laws are unconstitutional as applied to private property, this potential application does not demonstrate that the law punishes a <u>substantial amount</u> of speech in relation to its plainly legitimate scope. Just because a statute may encompass some impermissible application does not cause it to be

constitutionally overbroad.[12] *See Brune*, 767 F.3d at 1020. Plaintiffs also argue that K.S.A. § 25-2430 is constitutionally overbroad because it is subject to capricious enforcement. The Court disagrees that the law's enforcement is capricious just because it requires election officials to make determinations about whether conduct violates the statute, let alone that this demonstrates constitutional overbreadth. In sum, the Court finds that *Burson* dictates a conclusion that K.S.A. § 25-2430 is not unconstitutionally overbroad.

### B.   Count 2 – As Applied Challenge to K.S.A. § 25-2430 by Clark, KFC, and DeGroot Against the Attorney General

Clark, KFC, and DeGroot assert claims that K.S.A. § 25-2430 is unconstitutional as applied to them. The Court first notes that KFC's and DeGroot's "as-applied" challenges are indistinguishable from their facial challenge. Specifically, KFC wishes to hold political rallies within 250 feet of polling locations and DeGroot's wants to stand between 100 and 250 feet from a polling place "so that voters who are interested in his message can interact with him if they wish." Doc. 91 at 41-43. In other words, both KFC and DeGroot wish to engage in partisan advocacy within the buffer zone but fear prosecution under the statute. As the Court has already held, the electioneering statute is constitutional under *Burson*. Accordingly, to the extent KFC or DeGroot has standing to bring as-applied challenges, those claims would fail for the same reasoning.[13]

---

[12]   Like Plaintiffs' overbreadth challenge, *Burson* involved a facial challenge to the Tennessee statute. When confronted with the argument that the statute was also unconstitutional in certain specific applications, the Supreme Court declined to consider those arguments as part of the facial challenge because they were "'as applied' challenges that should be made by an individual prosecuted for such conduct" and "[i]f successful, these challenges would call for a limiting construction rather than a facial invalidation." *Burson*, 504 U.S. at 210 n.13. Here, Clark has brought an as-applied challenge based on application of K.S.A. § 25-2430 on private property. But, as discussed below, he lacks standing to pursue that claim.

[13]   To the extent KFC or DeGroot base their as-applied challenges on a desire to engage in electioneering more than 100 feet away but less than 250 feet away from polling entrances, the Court notes that this desire is generally not supported by any facts. Further, the Court has already held that Kansas's 250-foot buffer zone is constitutional under *Burson*, and therefore it need not engage in any limiting analysis as suggested by Plaintiffs.

Clark's as-applied challenge is based on his desire to display a campaign sign, or maybe engage in other unspecified electioneering, on private property that is between 100 and 250 feet from a polling place. As relief, Plaintiffs seek a declaration that K.S.A. § 25-2430 is unconstitutional as applied to private property and to non-partisan activities. Doc. 86 at 21. Defendants again challenge whether he has standing to pursue these claims, so the Court first evaluates standing.

1.       **Standing to Challenge K.S.A. § 25-2430's Application on Private Property**

As explained above, Plaintiffs assert standing based on an intention to engage in conduct prohibited by the statute coupled with a credible threat of enforcement. *Susan B. Anthony List*, 573 U.S. at 159. On this point, the Court finds that Clark's as-applied claim based on enforcement of the statute on private property is lacking on both points.

First, Clark has only stated a vague desire to place political signs on private property within the buffer zone. But he does not have any specific plans to do so. He would just like the option. He has not even demonstrated that he has permission to place signs from any private property owner within a buffer zone. Clark testified only that he knew the identity of the owner of one of the properties near a polling location in Douglas County, but that he's never had any discussions with that owner about campaigning on the property. These facts are insufficient to establish an intention to engage in a course of conduct prohibited by the statute.

Second, there is no genuine issue of fact that Clark faces a credible threat of prosecution for activities on private property. The Court notes that there are no facts suggesting that any Plaintiff (including Clark) has ever been cited or had K.S.A. § 25-2430 applied to them for any activities on private property. It is true that, in some counties, poll workers are trained to lay campaign signs within the buffer zone flat on election days, including on private property. But

there are no allegations that <u>Clark</u> has had any signs removed from private property or had K.S.A. § 25-2430 applied to <u>his</u> private property.

Based on this, the Court finds Clark lacks standing to challenge K.S.A. § 25-2430's application to private property. Accordingly, the Court need not reach the question of whether the electioneering statue is constitutional as applied in that context.

### 2. Standing to Challenge K.S.A. § 25-2430's Application to Non-Partisan Activities

Plaintiffs also seek a declaration that K.S.A. § 25-2430 is unconstitutional as applied to "any activities, signs, or speech that do <u>not</u> attempt to influence a voter to support or oppose a particular candidate, party, or question submitted[.]" Doc. 86 at 21 (emphasis added).[14] But as Defendants point out, K.S.A. § 25-2430 defines electioneering as the opposite of this: "knowingly attempting to persuade or influence eligible voters to vote for or against a particular candidate, party or question submitted." The Court cannot declare a statute unconstitutional based on activities it does not penalize—there is no case or controversy.

Nor is there a credible threat of future enforcement of the statute in this manner. It is true that Clark has been asked to leave polling places for engaging in non-partisan voter-assistance work. But he does not assert any as-applied claim based on those past actions. And since those events, Attorney General Opinion No. 2018-15 has specifically clarified that K.S.A. § 25-2430 does not apply to non-partisan voter-assistance activities. Based on this, there is no objectively justified fear that the Attorney General—the only named defendant on the as-applied claim— would enforce the statute against those activities. *See PeTA v. Rasmussen*, 298 F.3d 1198, 1202-

---

[14] Plaintiffs seek this relief on their as-applied claim, Doc. 86 at 21, but it is unclear which Plaintiff brings a claim based on this application of the statute. Clark is the only Plaintiff who has engaged in this conduct in the past and who asserts an as-applied challenge. Rosen has also been asked to leave a buffer zone for engaging in non-partisan voter-assistance work, but she does not assert an as-applied claim under K.S.A. § 25-2430. There are no facts that KFC or DeGroot have ever engaged in voter-assistance work or that they plan to do so in the future.

03 (10th Cir. 2002) (finding no standing where the challenged statute was initially misinterpreted as applying to the plaintiff's conduct, and thus there was no credible threat of future prosecution); *Faustin v. City, Cnty. of Denver*, 268 F.3d 942, 947-49 (10th Cir. 2001) (finding the plaintiff lacked standing to seek prospective injunctive relief because there was no real and immediate threat that she would be prosecuted under the challenged statute in light of the prosecutor's determination that her conduct did not violate the statute); *D.L.S.*, 374 F.3d at 974 (stating that there is no standing where future prosecutions have been disavowed).

Plaintiffs do allege that in November 2019—after the Attorney General Opinion was issued—an election-protection worker was asked to leave a polling place, and a reporter conducting exit polling was also removed, ostensibly to show that the statute was still being enforced contrary to the Attorney General Opinion. But there are no facts that the <u>Attorney General</u>—the only named Defendant on the as-applied challenge to K.S.A. § 25-2430—was applying the electioneering statute to non-partisan activities. Nor do these facts create a genuine issue of fact on whether any Plaintiffs have objectively justifiable fears that the statute will be enforced against them in this way by anyone. First, neither of these facts demonstrate that the individuals were asked to leave the entire buffer zone (versus the actual polling place). Second, the facts suggest that exit polling can be deemed partisan electioneering depending on how it is conducted. None of this creates a genuine issue of fact that the electioneering statute is being construed to apply to non-partisan activity in violation of the Attorney General Opinion.

Accordingly, the Court concludes that there is no case or controversy regarding application of K.S.A. § 25-2430 to any Plaintiff.

C. **Counts 4 and 5 – First and Fourteenth Amendment Challenges to Johnson County's Policy by Rosen against Johnson County**

The remaining two claims are brought by Rosen against Johnson County and center around the control statute, K.S.A. § 25-2810. Under K.S.A. § 25-2810(a), an "election board shall have control of its voting place and election procedure under the sole supervision of the secretary of state, county election officer, deputy county election officers and the supervising judge."

Rosen's two separate claims against Johnson County are difficult to discern. At different points in the briefing, Rosen attacks the statute itself, Johnson County's policy under the control statute of allowing poll workers the discretion to control polling locations, and simultaneously, Johnson County's lack of a policy dictating the precise circumstances under which poll workers can exclude people from polling locations. Ultimately, it appears Rosen is challenging Johnson County's "policy" of not having a policy listing the exact circumstances under which poll workers can exclude people from polling places. In other words, she challenges Johnson County's decision to allow poll workers to exercise the discretion they are granted by the control statute without explicitly stating how they should exercise that discretion. The Court will refer to this as Johnson County's "policy," recognizing that it is a practice rather than an actual written policy.

1. **Rosen's Standing to Challenge Johnson County's "Policy" Based on Chilling**

Rosen argues she has standing to challenge Johnson County's "policy" of allowing election officials to exclude individuals from polling places because she wishes to engage in speech at polling locations, but she is chilled from doing so because Johnson County has not adopted any standards regarding what speech its poll workers will allow or exclude. *See* Doc. 91 at 20; Doc. 99 at 44. She claims that she is afraid she will be excluded for "non-electioneering, non-criminal speech" based on the discretion of poll workers, and that Johnson County has "an ongoing policy"

of allowing poll workers to exclude people for "non-criminal speech activities." Doc. 91 at 20; Doc. 96 at 15-16. Johnson County contends, among other things, that any claimed injury by Rosen is speculative and wholly subjective, as she has no objective fear of any such "policy" being enforced against her. Doc. 90-1 at 26.

As noted above, to demonstrate that she has an actual stake in the controversy, a plaintiff must first demonstrate that she has suffered an injury in fact. *See Ward*, 321 F.3d at 1266. The chilling effect of a law can create a judicially cognizable injury. *Initiative & Referendum*, 450 F.3d at 1088. But to qualify, the chilling must arise from an <u>objectively justified fear of consequences</u>; a subjective chill is not enough. *Id*. Under this standard, the Court finds that Rosen has no objectively justified fear that Johnson County poll workers will use their discretion to exclude her for non-electioneering, non-criminal conduct.

This is because there is no genuine issue of fact that Johnson County is using its authority in this way. Rosen points to her previous exclusion for non-partisan voter-assistance work. But that occurred before Attorney General Opinion No. 2018-15 clarified that such conduct is not prohibited by the electioneering statute. It is uncontroverted that Johnson County abides by the Attorney General Opinion. Doc. 90-1 at 3; Doc. 96 at 2. To the extent Rosen wishes to engage in non-partisan voter-assistance activity but is chilled, the Court cannot conclude her fear is objectively justified. Her <u>subjective</u> fear that poll workers might disregard the Attorney General Opinion is not enough to create an Article III injury.

Rosen points to instances where she says other individuals have been asked to leave polling places. But, as discussed above, none of those incidents demonstrate that her fear of being excluded for non-electioneering or non-criminal activity is objectively justified. In one instance, a person was asked to leave the <u>interior</u> of a polling place because she was not an authorized poll agent.

Doc. 92-2 at 19 (deposition page 73, lines 19-24); *see also* K.S.A. § 25-3005 (allowing the presence of authorized poll agents). But this fact does not demonstrate that Rosen has an objectively justified fear that election officials will exclude her for "non-electioneering, non-criminal speech." The individual was merely moved to a different location, and the rationale was that her presence inside the polling place violated a statute.

Rosen also argues that Johnson County has indicated it would exclude people for partisan activity within the buffer zone or people gathering signatures for petitions. But <u>partisan</u> activity is prohibited by the electioneering statute, and is precisely the opposite of "non-electioneering, non-criminal speech." Likewise, a Johnson County official specifically testified that, in her opinion, exclusion of petition gatherers would be based on a violation K.S.A. § 25-2413 (a separate statute prohibiting the hindering of voters coming and going from polling places) or the electioneering statute, to the extent signature gatherers could be heard discussing issues with voters. Rosen also alludes to a reporter being told not to conduct exit polling. But it is uncontroverted that Johnson County prohibits <u>verbal</u> exit polling within the buffer zone based on the electioneering statute. Removal under these circumstances does not support an objectively justified fear of removal for "non-electioneering, non-criminal speech."

Rosen concedes that limiting "polling place exclusions to the commission of any election crime such as electioneering, criminal voter disruption, or voter intimidation" would satisfy the First Amendment. Doc. 91 at 46; *see also* Doc. 99 at 46. Based on the facts presented, that appears to be what Johnson County is doing. To the extent any of these instances could be proved to be a misapplication of the law, none of them demonstrate that Johnson County routinely excludes individuals from polling places for non-electioneering or non-criminal conduct.

Accordingly, the Court concludes that Rosen lacks standing to challenge Johnson County's "policy" under K.S.A. § 25-2810 because she cannot establish any injury that is sufficiently concrete and particularized.[15] *See Initiative & Referendum*, 450 F.3d at 1087-88. Because the Court concludes that Rosen lacks standing to challenge Johnson County's "policy" under the control statute, it need not reach the merits of her claims under either the First Amendment (Count 4) or the Fourteenth Amendment (Count 5).

## IV.   CONCLUSION

The Court concludes that at least Clark and Rosen have standing to facially challenge K.S.A. § 25-2430 against one or both Defendants, but that K.S.A. § 25-2430 is constitutional under the reasoning of *Burson v. Freeman*. Plaintiffs' as-applied challenges fail for lack of standing, as do Rosen's claims against Johnson County regarding its "policy" under K.S.A. § 25-2810.

THE COURT THEREFORE ORDERS that Plaintiffs' Motion for Summary Judgment (Doc. 88) is DENIED. Defendant Attorney General's Motion for Summary Judgment (Doc. 87) is GRANTED. Defendant Johnson County Election Commissioner's Motion for Summary Judgment (Doc. 90) is GRANTED.

THE COURT FURTHER ORDERS that Counts 2, 4, and 5 be DISMISSED WITHOUT PREJUDICE for lack of standing. Judgment is to be entered in Defendants' favor as to Count 1.

IT IS SO ORDERED.

Dated: October 7, 2020                              /s/ *Holly L. Teeter*
                                                                      HOLLY L. TEETER
                                                                      UNITED STATES DISTRICT JUDGE

---

[15] The distinction between Rosen's standing to challenge K.S.A. § 25-2430 and her standing to challenge Johnson County's "policy" is that Rosen has been excluded under the electioneering statute, and she wishes to engage in conduct specifically prohibited by that statute. This satisfies the standard for standing based on a threatened enforcement of that statute, as discussed in Section III.A.1. By contrast, her challenge of Johnson County's "policy" is based solely on an alleged chilling. As discussed above, this subjective fear is not enough to confer standing on Counts 4 and 5.